MILLER *against* HACKLEY, et al.

All the sets of a bill of exchange are considered as making one bill.
To make a promise to pay a bill available against a drawer, whose liability
    has been discharged by the *laches* of the holder, it must appear that such
    promise was made with a full knowledge of the fact.   Whether he ought
    also to know his legal rights.   *Quæ et*, vide, note.

THIS was an action, by the first indorsee, against the drawers of an inland bill of exchange.

The count, under which the plaintiff offered his testimony, alleged the making of the second of exchange by the defendants, and the indorsement of that bill to the plaintiff, and then set forth notice of the indorsement, and the presentment of the first of exchange, without averring that the first of exchange had been indorsed to the plaintiff.   On this ground the defendants moved for a non-suit.

THOMPSON, J., considered the application as made in season; but said, that all the sets of a bill must be considered as one bill, and that the averment, in this view, was correct.

No notice of the dishonor having been given to the defendants, the plaintiff proved that, about three months after the protest of the bills, one of the drawers said, to a third person, that he would take care of the bills, or that he would see them paid.

The defendant's counsel contended, that before the promise of the defendant could amount to a waiver of the want of notice, it must appear that he knew the fact of the

want of notice of the dishonor; and, also, that he was, on ᵔccount, discharged in law.  5 Burr. 2670; 1 T. R.

The plaintiff's counsel cited Chitty on Bills, (new edition, 171, and 7 East, 231,) to show that the promise made, in this case, was a sufficient waiver.

THOMPSON, J.  That a promise may amount to a waiver, in a case like the present, enough must appear to render it justly presumable that the.defendant, at the time, knew the fact of the want of notice, and also knew his legal rights.(1)

Verdict for the plaintiff.

*Emmet*, for the plaintiff.

*Colden*, for the defendants.

(1) This case came before the supreme court, and was finally decided, in February term, 1810, (5 Johns. 375,) in favor of the defendant, on the ground that there was no sufficient evidence of waiver of notice.  On this subject, Van Ness, J., in delivering the opinion of the court, says: "A subsequent promise to pay, under a knowledge of the fact of a want of notice, would be a waiver of notice; but I think there was not, in this case, the requisite evidence of such a promise.  It ought to have been made out clearly and unequivocally.  The defendant only said to a third person, 'that he would take care of the bills,' or 'see them paid.'  Whether he used the one phrase, or the other, is left in doubt; and if the first phrase was used, it was altogether uncertain whether he meant to be understood that he would resist, or would pay the bill.  It would be dangerous to fix an indorser, without notice, and perhaps without knowledge of the *laches* of the holder, upon such loose conversation with a third person; no case has ever gone so far."  Upon this subject of waiver, it has been doubted, whether a promise by an indorser to pay, with full knowledge of the *laches* of the holder, was sufficient to make

Miller v. Hackley.

him liable; and whether it ought not also to appear, that at the time of making the promise, he knew the legal consequences of the holder's *laches.* It has been also doubted, whether such a promise, although made with a full knowledge of the facts and of the law, would not be itself a *nudum pactum;* the indorser being already discharged, and no new consideration passing between the parties.

In the case of *Chatfield* v. *Paxton,* which is reported in a note in Chitty on Bills, (102,) and also in a note to the case of *Bilbie* v. *Lumlie,* (2 East, 471,) Lord Kenyon seems to have been of opinion, that to make the indorser liable on a new promise, he should not only know the facts, but also the legal consequences of them. And Thompson, J., in the case in the text, seems to have adopted the same opinion. Lord Ellenborough, however, in the case of *Bilbie* v. *Lumlie,* combats this principle, generally, and also doubts the accuracy of the report, in the case of *Chatfield* v. *Paxton.* He, in that case, says, that the case of *Chatfield* v. *Paxton,* is the only case he ever heard of, in which ignorance of the law, was received as a defence. That Lord Kenyon did, in that case, intimate something of that sort at *nisi prius;* but when it was brought before the court, on a motion for a new trial, there were some other circumstances of fact relied on, and it was so doubtful at last, on what precise ground the case turned, that it was never reported.

Mr. Evans, in his treatise on bills of exchange, (p. 83,) commenting on this subject, admits that ignorance of law can form no defence; but contends, that such a promise, by an indorser, is, a *nudum pactum.* "The degree of legal knowledge, (says Mr. Evans,) which a person may possess, or the mistaken notions under which he may act, can seldom be the subject of accurate investigation. If a person, with a view to voluntary donation, or in execution of what he conceives to be an honorary obligation, actually pays a sum of money, he has no pretence to reclaim it; but a promise, under these circumstances, not being made upon any adequate consideration, induces no legal obligation. It is a general presumption, that a person does not intend to give away his property, *nemo præsumitur donare;* and, therefore, when the indorser of a bill, being exempted from his liability in point of law, but pressed for payment, does any act importing a promise, it may be justly inferred, that such a promise is made under the idea of his being already subject to legal coercion. A prior moral obligation is sufficient to support a legal promise, but there is no such obligation on the part of an indorser of a bill of exchange in the ordinary course of business. He gives an adequate value upon passing it away, acting in both instances upon the supposition of its being an available security, and engaging in the latter case, (in effect as security for the drawer or acceptor,) that it shall be regularly paid, provided it is properly presented, and a regular notice given of its being dishonored.

Miller v. Hackley.

But there is no reason founded upon moral equity, for extending the obligations of such a person, beyond the legal import of his undertaking; and it would, therefore, be more reasonable, as a general proposition, to decide that such an indorser might recover back what he had paid, not being liable, in point of law, than that he should be bound by a naked promise, unaccompanied by any legal or moral obligation."

The law, however, seems now to be well settled, that a promise to pay, with knowledge of the fact of *laches*, is sufficient; (*Stevens* v. *Lynch*, 12 East, 38,) and this, not on the ground of its being a new contract, but on the ground that such promise is an express waiver of the *laches*. A promise, or even payment without such knowledge, would be unavailable; and, in the case of payment, the money might be recovered back. Vide *Chatfield* v. *Paxton*, above cited. The earliest case, on this subject, is that of *Haddock* v. *Bury*, (Trin. 3 G. 2, at Nisi Prius,) where Lord Raymond held, that if an indorser has neglected to demand of the drawer in convenient time, a subsequent promise to pay, by the indorser, will cure the *laches*. Vide note to *Lumlie* v. *Robertson*, 7 East, 236. In *Blssard* v. *Hurst*, (Burrows, 2670,) a promise to pay, was made by an indorser, without knowledge of the *laches* of the holder, in not giving notice of non-acceptance to the drawer; and the promise was held not to be a waiver. The various cases on this subject are cited in *Duryee* v. *Dennison*, 5 Johns. 248, et vide *Goodall* v. *Dollay*, 1 D. & E. 712, and *Donaldson* v. *Means*, 4 Dall. 109.

The rule on this subject is expressed with considerable precision, in a case decided since the preceding part of this note was written.

In *Trimble* v. *Thorne*, (16 Johns. 154,) Spencer, C. J., referring to various cases on this subject, says: "They decide that if an indorser of a bill or note, who has not had regular notice of non-payment, by the acceptor or maker, with full knowledge of that fact, makes a subsequent promise to pay it, is a waiver of a want of notice, and he is liable; but it must be shown, affirmatively and clearly, that the defendant knew, when he made the subsequent promise, that he had not received regular notice. The court never intended, in the various cases which have come before them on this point, to leave it to be inferred, from the mere fact of the subsequent promise, that regular notice had been given or was intended to be waived.

" In the case of Beekman, survivor of *Walsh* v. *Connelly*, recently before us, we held that proof of a promise to pay, merely, without its appearing that the party knew he had not received regular notice, did not dispense with the proof of regular notice. An indorser may believe that due notice has been given, inasmuch as notices need not be served personally, and under an ignorance of the facts, consider himself liable, when he is not. It is no hardship, on the holder of a bill or note, to require of him proof of regular notice. But if a party, with a full knowledge of all the facts, voluntarily pro-

mises to pay and waives his right to notice, he will be held to his promise." The soundness of the rule, that there is no waiver without full knowledge of facts, is clear enough; the embarrassment here is practical, the *onus* being cast upon the plaintiff to prove, affirmatively, that the defendant knew that no notice had been served. It is presumed that the promise, to pay, is *prima facie* enough, and that all the court wish to express here is, that if it should be made to appear that the defendant made a promise upon a misconception of the facts, that state of the case being established, would preclude the idea of a waiver, which would, otherwise, necessarily result from an absolute promise to pay.

The legal distinction, between an ignorance of fact and an ignorance of law, is strongly marked in the Roman Code. And as it is consistent with right reason, and but few cases are to be found in the books of the common law, bearing directly on this subject, a brief reference to some of the positions of the Civilians, may not be uninstructive.

In treating this subject, the Roman lawyers begin by dividing ignorance into two kinds: ignorance of fact, and ignorance of law. *Ignorantia duplex, alia facti, alia juris;* and some refinement occurs in the distinctions which they draw, between ignorance of fact, ignorance of law, and a mixed ignorance of the one and of the other. This distinction does not seem to have been attended to, with sufficient closeness by St. German, in his doctor and student. For, in his reply to the observation of the doctor, who remarks: I see well, that ignorance sometimes excuseth, in the law of England, p. 202, answers in p. 256, and sets forth cases of ignorance of fact merely. The same general rule prevails in the common and in the civil law, from which the common law has borrowed it; (*ignorantia facti excusat, ignorantia juris non excusat,* (1 Co. 177;) but exceptions are found in the civil law, to both branches of this rule. The Civilians notice various degrees of ignorance of fact, but every species of ignorance of fact is not allowed to be used as an excuse. " *Nec supina ignorantia ferenda est factum ignorantis, ut nec scrupulosa, inquisiteo exigenda. Scientia enim hoc modo æstimanda est, ut neque negligentia crassa, aut nimia securitas satis expedita est neque delatoria curiositas exigetur. Ulp. lib.* 18, *ad legem Juliam et Papiam.*" And as examples of this gross ignorance, which cannot avail as an excuse, we find the following: "*Ignorantia et negligentia summa est, id ignorare, quod nullus in civitate ignoret, hujusmodi facti ignorantia obest. Supina ignorantia est, ignorare quod omnes scimus' Curiosi et negligentes contrarii: diligens inquisitor medius inter utrosque.*" As to the second branch of the rule, ignorance of the law is sometimes an excuse. "*Interdum tamen juris error excusatur, ut si conjuucta habeat rusticitatem.*" Again: *Rusticitatis et imperitiæ parcendum: perraro tandem, id est certis tantum casibus, non enim exigimus ut omnes juris consultorum scientiam dedicerint, nec ut omnes patres familias, Magonis nec Cas-*

Miller v. Hackley.

*sii libros: sed communem corum quæ in legibus continentur inteligentiam in omnibus, exigimus, &c.  Denique, juris ignorantiam allegare non potest, qui jurisconsulti consulendi copiam habuit, vel qui sua, id est naturali prudentia instructus esse potuit."*

Ignorance of the law was also an excuse to certain classes of the community. *Minori, fœminæ, militi jus ignorare permittitur.* This, however, held only with reference to the civil or municipal law, *jus puta, civile, non etiam naturali et gentium. Weisenb, ad pandec,* 450. The certainty of the law, and the natural uncertainty of facts, by reason of the fallibility of human testimony, form the basis of all the general rules on this subject. *Juris et facti discrimen; jus finitum et certum, facta infinita, jus notum prudenti, facti interpretatio, plerumque prodentissimos quesque fallit.* Vide, Lib. 24; Dig. 6; *de juris et facti ignoranti." Passim.*

Mr. Story, in his "Essay on Contracts," (sec. 409,) gives a summary of all the cases on this subject; and the rule, to be deduced, seems to be, that ignorance of the law can excuse in no case; but, with regard to ignorance of fact, it will excuse in all cases, notwithstanding the party alleging such excuse, had the means, by due diligence, of discovering the fact, or had once been possessed of the fact and forgotten it, at the time of contracting. *Vide etiam, Goddard v. Merchant's Bank,* 2 Sandf. 247 ; *Fleetwood v. City of New York,* 2 Sandf. 475.